**WO**

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

Govig & Associates Incorporated, et al.,

Plaintiffs,

v.

United States of America, et al.,

Defendant.

No. CV-19-05185-PHX-SMB

**ORDER**

Pending before the Court is the United States' Motion to Dismiss and Supporting Memorandum and responsive pleadings. (Doc. 23, "Mot."; *see also* Doc. 26, "Resp."; Doc. 28, "Reply".) Despite the parties' independent requests, the Court elects to rule without oral argument. *See* L.R. Civ 7.2(f). This Order also considers Plaintiff's related Motion for Judicial Notice of Adjudicative Facts, (Doc. 29), to which the Government responded. (Doc. 30.)

The core dispute in the motion before the Court is one of subject matter jurisdiction. Plaintiffs, Govig & Associates Incorporated, *et al*. ("Govig"), brought the underlying action to set aside and declare unlawful IRS Notice 2007-83 based on alleged violations of the Administrative Procedures Act (APA). The Government argues that the jurisdictional limitations of this Court under the Anti-Injunction Act ("AIA"), 26 U.S.C. § 7421, and the "tax exception" to the Declaratory Judgement Act ("DJA"), 28 U.S.C. § 2201, prevent the Court from hearing the case. As is further explained below, the Court finds the AIA does bar this Court from hearing the case as doing so would inhibit the assessment or collection

of a tax assessed under 26 U.S.C. § 6707A.

## I.    Background

### A.  Regulatory Landscape

Out of necessity, the federal tax system is built upon "a system of self-reporting," *United States v. Bisceglia*, 420 U.S. 141, 145 (1975), and is prone to the shortcomings inherent in any honor system. "It would be naïve to ignore the reality that some persons attempt to outwit the system, and tax evaders are not readily identifiable." *Id*. Fully recognizing this weakness, Congress has enacted legislation granting the Internal Revenue Service ("IRS") authority to establish procedures for information gathering that require taxpayers to disclose participation in certain transactions. 26 U.S.C. §§ 6011, 6707A. Thus, 26 U.S.C. § 6011 mandates that, when IRS regulations require it, a taxpayer "shall make a return or statement" providing the IRS with information. Drawing on their statutory authority, the IRS has since promulgated regulations requiring taxpayers to disclose participation in certain "reportable transactions" the IRS believes could be used for tax avoidance. *See* 26 CFR 1.6011-4. A subset of these "reportable transactions" are "listed transactions," which are defined as "a transaction that is the same as or substantially similar to one of the types of transactions that the [IRS] has determined to be a tax avoidance transaction and identified by notice, regulation, or other form of published guidance as a listed transaction." *Id*.

Failure to comply with IRS reporting requirements comes at significant cost to a non-reporting taxpayer. Under 26 U.S.C. § 6707A, Congress added a penalty provision strengthening the IRS's ability to obtain information by "encourag[ing] voluntary disclosure of listed transactions." *Interior Glass Sys. v. United States*, 927 F.3d 1081, 1087 (9th Cir. 2019), *cert. denied*, 140 S. Ct. 606, 205 L.Ed.2d 390 (2019). Taxpayers who fail to submit information regarding "listed transactions" to the IRS face penalties of "75 percent of the decrease in tax shown on the return as a result of such transaction" up to a $200,000 maximum. 26 U.S.C. §§ 6011, 6707A(b). However, taxpayers who believe penalties are assessed against them in error are not without remedy. Congress provided a

mechanism for challenging an assessment via a "refund suit." *See* 26 U.S.C. § 7422. A taxpayer who fails or declines to submit the required report may pay the penalty and sue for a refund, after which time a court can consider the legality of the regulation. *Id.*

### B. IRS Notice 2007-83

This regulatory scheme intersects with the present case due to a provision of CFR 1.6011-4 defining listed transactions as those "similar to tax avoidance transactions" and "identified by notice…as a listed transaction." On October 17, 2007, the IRS issued Notice 2007-83 (the "Notice") which informed taxpayers that tax benefits claimed for a category of trust arrangements were not allowable for federal tax purposes. *See* 2007-45 I.R.B. 960, 2007 WL 3015114 (Oct. 17, 2007). Specifically, the Notice designated as "listed transactions" certain trust arrangements that had been "promoted to small businesses and other closely held businesses as a way to provide cash and other property" to owners "on a tax-favored basis."[1] 2007 WL 3015114, at *2. The Notice targeted transactions where businesses use trusts to create welfare benefit funds that included cash-value life insurance policies. *Id.* The trust would collect the businesses contributions then pay the insurance policy premiums. *Id.* at 3-4. With the passage of time, the arrangement could be terminated, and the accumulated cash-value life insurance policies, cash, or other trust property could be distributed to participating employees—which were often the business owners themselves. *Id.* at 4. Because under the Notice these trust arraignments were now defined as "listed transactions," participants in the trusts were required to file a Form 8886 disclosure of their involvement in the trust transaction with the IRS. *Id.* Failure to do so could trigger the penalty provision of § 6707A outlined above.

---

[1] The notice identifies "listed transactions" by four elements:
(1) the transaction involved a trust or other fund described in 29 U.S.C. § 419(e)(3) that is purportedly a welfare benefit fund;
(2) contributions to the trust or other fund were not governed by a collective bargaining agreement;
(3) the trust or other funds paid premiums on one or more cash-value life insurance policies that accumulated value; and
(4) the employer took a deduction that exceeded the sum of certain amounts, depending on whether the benefits provided under the plan were insured or uninsured.

## II.        Facts and Procedural History

The Plaintiffs in this case are participants in trusts that have been designated as "listed transactions" under the notice. The Plaintiff Govig is a privately held executive recruiting firm whose shareholders are trusts associated with each of the individual plaintiffs. Though the trusts in question were "listed transactions" under the Notice, the Plaintiffs failed to file the requisite disclosure (form 8886) during 2015. Because of this alleged violation of the reporting requirement during the 2015 year, on August 23, 2019, the IRS sent Govig a notice of federal tax due which it noted was a penalty charge under 26 U.S.C. § 6707A. The individual Plaintiffs were likewise assessed penalties on August 26, 2019. All Plaintiffs eventually paid the penalty for the 2015 tax year. At the time in which Plaintiffs filed their complaint, the IRS was in the process of investigating whether the Plaintiffs owed a similar penalty for the 2016 and 2017 tax years.

Plaintiffs brought this action challenging the reporting requirement imposed by the Notice and asking this Court to set aside the Notice and declare it unlawful. (Doc. 1. at 29.) As grounds for such action, Plaintiffs allege the Notice was created in violation of the Administrative Procedures Act (APA) in that it violates the notice-and-comment provisions of the APA, is arbitrary and capricious, and *ultra vires* in nature. *See* 5 U.S.C. §§ 553; 706(2)(A). Defendant responded with a motion under Rule 12(b)(1) arguing that the Court lacks subject matter jurisdiction to hear the case. (Doc. 23. at 1.) Defendant's motion was based on provisions of the AIA and the DJA which prevent federal courts from granting prospective relief in suits "for the purpose of restraining the assessment or collection of any tax." 26 U.S.C. § 7421; 28 U.S.C. § 2201. Plaintiffs responded arguing neither the AIA nor the DJA apply to this action because they were not challenging the collection of a tax but merely challenging the reporting requirement imposed by the Notice. (Doc. 26. at 7-8.) Plaintiffs further argued that even if this action would normally be prevented by the AIA, Plaintiffs' unique circumstances justified this Court in applying the exceptions to the AIA bar created by the Supreme Court in *South Carolina v. Regan*, 465 U.S. 367 (1984) and *Enochs v. Williams Packing & Navigation Co., Inc.*, 370 U.S. 1

1    (1962). (*Id*. at 8.) To further support the application of such exceptions, Plaintiffs have filed

2    a motion asking this Court to "take judicial notice of the incontrovertible fact that Plaintiffs

3    are subject to potential criminal sanctions" based on their non-compliance with the Notice.

4    (Doc. 29. at 2.) Defendant has responded arguing Plaintiffs' request is both procedurally

5    improper and unmerited given the facts of the case. (Doc. 30. at 4-5.) Both parties now

6    await this Court's decision.

7         **III.    Standard of Review**

8              Under Federal Rule of Civil Procedure 12(b)(1), a party may move to dismiss a

9    claim for lack of subject-matter jurisdiction. "Federal courts are courts of limited

10   jurisdiction" and may only hear cases as authorized by the Constitution or Congress.

11   *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). The party asserting

12   jurisdiction bears the burden of proof. *Indus. Tectonics, Inc. v. Aero Alloy*, 912 F.2d 1090,

13   1092 (9th Cir. 1990). When the plaintiff does not meet the burden of showing the court has

14   subject-matter jurisdiction, the court must dismiss the action. Fed. R. Civ. P. 12(h)(3).

15   "Because subject-matter jurisdiction involves a court's power to hear a case, it can never

16   be forfeited or waived." *United States v. Cotton*, 535 U.S. 625, 630 (2002). "A Rule

17   12(b)(1) jurisdictional attack may be facial or factual." *Safe Air for Everyone v. Meyer*, 373

18   F.3d 1035, 1039 (9th Cir. 2004). A facial attack "asserts that the allegations contained in a

19   complaint are insufficient on their face to invoke federal jurisdiction." *Id*. The court

20   "accept[s] the plaintiff's allegations as true" and "determines whether the allegations are

21   sufficient as a legal matter to invoke the court's jurisdiction," "drawing all reasonable

22   inferences in the plaintiff's favor."  *Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir.

23   2014). In a facial attack, our inquiry is confined to the allegations in the complaint, while

24   a factual attack permits the court to look beyond the complaint. *Savage v. Glendale Union*

25   *High Sch.*, 343 F.3d 1036, 1039 n.2 (9th Cir. 2004).

26        **IV.    The Jurisdiction of the District Court**

27             Federal district courts are courts of limited jurisdiction, owing both their creation

28   and the scope of their authority to the will of Congress. The Constitution grants Congress

the express power to establish courts. U.S. Const. Art. III § 1. This grant includes the implied power to regulate and limit their jurisdiction. *Veterans for Common Sense v. Shinseki*, 678 F.3d 1013, 1019 (9th Cir. 2012) (en banc) (citing *Palmore v. United States*, 411 U.S. 389, 400-01(1973)). When exercising this power, it is well established that Congress is not required to vest inferior federal courts "with all the jurisdiction it was authorized to bestow under Art. III." *Palmore*, 411 U.S. at 400-01; *see also Sheldon v. Sill*, 49 U.S. (8 How.) 441, 449 (1850) ("Congress may withhold from any court of its creation jurisdiction of any of the enumerated controversies. Courts created by statute can have no jurisdiction but such as the statute confers.").

Both the Anti-Injunction Act and the Declaratory Judgment Act's "tax exception" are examples of congressionally imposed limitations on this Court's jurisdiction. Under the DJA, a federal court may issue declaratory judgments "except with respect to Federal taxes[.]" 28 U.S.C. § 2201. Similarly, the AIA provides that "no suit for the purpose of restraining the assessment or collection of any tax shall be maintained in any court by any person." 26 U.S.C. § 7421(a). The Ninth Circuit has held that the DJA and AIA are co-extensive in their limitations. *Perlowin v. Sassi*, 711 F.2d 910, 911 (9th Cir. 1983) ("[i]f a suit is allowed under the [AIA], it is not barred by the [DJA]."). The AIA's principal purpose is to protect "the Government's need to assess and collect taxes as expeditiously as possible with a minimum of preenforcement judicial interference, 'and to require that the legal right to the disputed sums be determined in a suit for refund.'" *Confederated Tribes & Bands of the Yakama Indian Nation v. Alcohol & Tobacco Tax & Trade Bureau*, 843 F.3d 810 (9th Cir. 2016) (quoting *Bob Jones Univ. v. Simon*, 416 U.S. 725, 736 (1974)); *see also*, *Miller v. Standard Nut Margarine Co.*, 284 U.S. 498, 509 (1932) ("The principal reason [for the act] is that,…such suits would…interfere with and thwart the collection of revenues for the support of the government.").

At first glance the penalty imposed for non-compliance with the reporting requirement under 26 U.S.C. § 6707A(b) hardly seems to be a "tax" in the classic conception. The purpose of § 6707A(b)'s penalty is not to collect revenue, but to compel

- 6 -

compliance with IRS disclosure requirements. *Interior Glass*, 927 F.3d at 1087. However, for the purposes of the AIA this is hardly material. While Congress cannot evade constitutional limits on its own power simply by describing something as a tax, *Nat'l Fed'n of Indep. Bus. v. Sebelius*, 567 U.S. 519, 544 (2012), the AIA has no such limitation. All jurisdiction of the district courts is within the power of Congress to grant or withhold. "Congress can, of course, describe something as a penalty but direct that it nonetheless be treated as a tax for purposes of the Anti-Injunction Act." *Id*. Thus, the determination of whether 26 U.S.C. § 6707A(b)'s penalty should be construed as a tax and whether the AIA bars Plaintiffs' suit begins and ends with congressional intent.

## V.   Analysis

Under the AIA "no suit for the purpose of restraining the assessment or collection of any tax shall be maintained in any court." 26 U.S.C. § 7421(a). Thus, if an action falls within the preview of the AIA's prohibition, the Court has no jurisdiction unless one of two narrow exceptions to the AIA apply. One such exception is found in *South Carolina v. Regan*, where the Supreme Court held the AIA does not bar an action when a plaintiff demonstrates they have no alternative legal avenue to litigate their claims. 465 U.S. at 381. The second exception to the AIA is found in *Enochs v. Williams Packing*, where the Supreme Court held the AIA will not bar an action where "under no circumstances could the Government ultimately prevail," and "equity jurisdiction otherwise exists." 370 U.S. at 7. As is explained below, the AIA applies because the ultimate effect of this action is to restrain the assessment of a penalty under § 6707A(b), which Congress has determined to be a tax. Further, neither the *Regan* nor the *Williams Packing* exceptions apply because Congress has provided an alternate remedy and there are some circumstances in which the Government could prevail.

### A. The AIA Applies to Plaintiffs' Action

The Defendant argues, and the Plaintiffs do not dispute, that the actual penalty assessed under § 6707A(b) is a tax for the purposes of the AIA.[2] However, Plaintiffs argue

---

[2] The Court also notes that the penalty provision in 26 U.S.C. § 6707A(b) can be found

they "do not seek to restrain the assessment of [the penalty]…rather they seek to avoid…[the] reporting obligation." (Doc. 26. at 12.) Plaintiffs cite to *Direct Mktg. Ass'n v. Brohl*, 575 U.S. 1 (2015), arguing their suit challenges the "information gathering" mandated by the Notice's disclosure requirement and has nothing to do with the assessment or collection of a tax. Yet Defendant argues, and this Court agrees, that Plaintiffs have created a distinction without difference. Indeed, multiple circuits have rejected the exact distinction Plaintiffs attempt to draw. *See CIC Servs., LLC v. IRS*, 925 F.3d 247 (6th Cir. 2019), *cert. granted*, 140 S. Ct. 2737 (2020); *Fla. Bankers Ass'n v. United States Dep't of the Treasury*, 799 F.3d 1065 (D.C. Cir. 2015), *cert. denied*, 136 S. Ct. 2429 (2016). This Court instead agrees with the conclusion reached by then-Judge Kavanaugh in *Florida Bankers*, that the AIA applies "even if the plaintiff claims to be targeting the regulatory aspect of the regulatory tax…because invalidating the regulation would directly prevent collection of the tax." 799 F.3d at 1070-71.

Plaintiffs argument based on *Direct Marketing* is unpersuasive. In *Direct Marketing* the Supreme Court, applying the Tax Injunction Act (TIA), found that act did not bar a suit challenging "notice and reporting requirements" required by a state tax law. 575 U.S. at 7. The TIA provides that federal district courts "shall not enjoin, suspend or restrain the assessment, levy or collection of any tax under State law." *Id*. Though the TIA at issue in *Direct Marketing* did not deal with federal taxes, the Court noted "it was modeled on the Anti-Injunction Act (AIA), which does." *Id*. at 8. The Supreme Court found that "words used in both [a]cts are generally used in the same way" and the meaning of both acts' terms should be construed by reference to the broader tax code. *Id*.

The Court in *Direct Marketing* went on to construe the term "assessment" for the purposes of the TIA (and by extension the AIA) as "refer[ring] to the official recording of a taxpayer's liability" and found the act of assessing did not cover the "information

---

within subchapter 68(B) of the code. *See Sebelius*, 567 U.S. at 544-45 ("We have thus applied the Anti-Injunction Act to statutorily described 'taxes' even where that label was inaccurate…Penalties in Subchapter 68B are thus treated as taxes under Title 26, which includes the Anti-Injunction Act.").

gathering" or "private reporting of information used to determine tax liability." *Id*. at 8-9. To Plaintiffs, the Supreme Court's construing of "assessment" to not include "information gathering" or "private reporting of information" is dispositive. Plaintiffs argue that, like *Direct Marketing*, their action does not affect the "assessment" of taxes because they too challenge the "private reporting of information" that occurs prior to assessment or taxation. (Doc. 26. at 15.) To the Plaintiffs', this means their action does not fall within the AIA bar against actions restraining "*the assessment* or collection of taxes." Yet while Plaintiffs are quick to point out the common language of TIA and AIA, they simultaneously ignore where the statutes' language differs.

The pertinent part of the TIA provides that federal district courts "shall not *enjoin, suspend or restrain* the assessment, levy or collection of any tax under State law." 28 U.S.C. § 1341 (emphasis added). The AIA in contrast states that "no suit *for the purpose of restraining* the assessment or collection of any tax shall be maintained in any court." 26 U.S.C. § 7421 (emphasis added). This difference in language was highly relevant to the Court's decision in *Direct Marketing. Id*. at 13. There the Court, applying the cannon against surplusages as well as *Noscitur a sociis*, found that:

> the words "enjoin" and "suspend" are terms of art…referring to different equitable remedies that restrict or stop official action to varying degrees, strongly suggesting that "restrain" does the same. As used in the TIA… "restrain" acts on a carefully selected list of technical terms—"assessment, levy, collection"—not on an all-encompassing term, like "taxation." To give "restrain" the broad meaning selected by the Court of Appeals would be to defeat the precision of that list, as virtually any court action related to any phase of taxation might be said to "hold back" "collection." Such a broad construction would thus render "assessment [and] levy"—not to mention "enjoin [and] suspend"—mere surplusage, a result we try to avoid.

575 U.S. at 13 (citing *Hibbs v. Winn*, 542 U.S. 88, 101 (2004)).

The AIA is not so limited by "technical" or "precise" language. Instead, it contains a broader restriction on any suit "for the purpose of" restraining the assessment or collection of taxes. 26 U.S.C. § 7421. The Court can only conclude this different wording

is intended to carry a different broader meaning; a conclusion supported by the Supreme Court's prior applications of the AIA. *See Bob Jones Univ.*, 416 U.S. 725 at 738 (finding the AIA barred a suit wherever a "primary purpose of [the suit]" was to prevent assessment or collection of a tax, regardless of how the challenge was characterized); *Alexander v. "Americans United" Inc.*, 416 U.S. 752 (1974) ("Under any reasonable construction of the statutory term 'purpose,' *the objective of this suit* was to restrain the assessment and collection of taxes" (emphasis added)).

The broader language of the AIA as compared to the TIA also played a part in the *Florida Bankers* decision as well as in *CIC Services*. In both cases, the plaintiffs attempted to avoid the AIA by construing their challenge as directed at a reporting requirement rather than at the tax itself. 799 F.3d at 1067; 925 F.3d at 255. Yet as Justice Kavanaugh held in *Florida Bankers*, such "nifty wordplay" is unavailing. 799 F.3d at 1070. Instead, as both the Sixth Circuit and D.C. Circuit found, the specific method of a challenge is not controlling, the purpose and result of the challenge are. *CIC Servs.*, 925 F.3d at 257 (citing *Fla. Bankers*, 799 F.3d at 1071). Both Courts found the AIA is triggered, "even if the plaintiff claims to be targeting the regulatory aspect…because a challenge to the regulatory aspect…is necessarily also a challenge to the tax aspect of a regulatory tax." *Id.* Invalidating the former would "necessarily" invalidate the latter. *Id.* The Court finds this analysis convincing. The act of challenging the Notice to invalidate the reporting requirement would "necessarily" invalidate the tax and the AIA applies under such circumstances.

In light of the above, the Court finds that Plaintiffs' challenge is subject to the AIA. The decisions of other circuits, the Supreme Court's broad application of the AIA, and the differing language in the TIA and AIA all require this result. As such this Court lacks jurisdiction to hear Plaintiffs case unless an exception applies.

### B. The *Regan* Exception

The *Regan* exception to the AIA applies only where a plaintiff has no alternative legal avenue for pursuing a challenge. 465 U.S. at 378. As the Ninth Circuit has previously

noted "The *Regan* exception…is a narrow one." *Confederated Tribes*, 843 F.3d at 815 (citing *Am. Bicycle Ass'n v. United States* (*In re Am. Bicycle Ass'n*), 895 F.2d 1277, 1281 (9th Cir. 1990) (holding the purpose of the AIA requires that any constructions be strictly construed)). The thesis of the *Regan* exception is that "Congress did not intend the [AIA] to apply to actions brought by aggrieved parties for whom it has not provided an alternative remedy." *Am. Bicycle Ass'n*, 895 F.2d at 1280 (quoting *Regan* 465 U.S. at 378). Courts have consistently held an "alternative remedy" exists, and thus *Regan* is inapplicable, where a party can file a refund suit. *American Bicycle Ass'n*, 895 F.2d at 1281 n.4; *Confederated Tribes*, 843 F.3d at 815-16.

The *Regan* exception applies when a party has been provided with no alternative remedy, but not where a party simply believes its remedy is inadequate. As the Court stated in *William Packing*, "[I]f Congress had desired to make the availability of the injunctive remedy against the collection of federal taxes…depend upon the adequacy of the legal remedy, it would have said so explicitly." 370 U.S. at 6. Additionally, as *Regan* noted, the Supreme Court has previously rejected AIA exceptions based on a remedy's "inadequacy." 465 U.S. at 376 (citing *Alexander*, 416 U.S. at 761; *United States v. American Friends Service Committee*, 419 U.S. 7, 11 (1974) (finding "inadequacy of available remedies…[shows] an essential prerequisite for traditional equity jurisdiction," but does not itself create an exception to the AIA)). The Ninth Circuit applies *Regan* along these lines, requiring a refund suit be unavailable before R*egan* is available. *American Bicycle Ass'n*, 895 F.2d at 1281 n.4; *Confederated Tribes*, 843 F.3d at 815-16.

Here Plaintiffs have an alternative remedy. Plaintiffs admit an alternative remedy exists in the form of a refund suit, yet insist *Regan* applies because the remedy is not a meaningful one. Plaintiffs argue their remedy is illusory because to file a refund suit they must first ignore the notice, receive the penalty, pay the penalty, and then challenge that payment in a refund suit. (Doc. 26. at 21-22.) Plaintiffs argue this can only be done at great financial and personal risk. (*Id.*) Yet *Regan* does not create an exception where an alternate remedy is inadequate, only where an alternate remedy does not exist. The multiple cases

where the Supreme Court declined to create an exception for inadequate remedies and the uniform application of the *Regan* exception in the Ninth Circuit make that clear.[3] As such the *Regan* exception does not apply to the Plaintiffs' case.

### C. The *Williams Packing* Exception

Under *Enoch v. Williams Packing*, the Supreme Court recognized an exception to the AIA where taxpayer shows: "(1) it is 'clear that under no circumstances could the government ultimately prevail' and (2) 'equity jurisdiction' otherwise exists, i.e., the taxpayer shows that he would otherwise suffer irreparable injury." *Church of Scientology v. United States*, 920 F.2d 1481, 1485 (1990) (citing *Commissioner v. Shapiro*, 424 U.S. 614, 627 (1976) (quoting *Williams Packing*, 370 U.S. at 7)). The first prong of this test is met only if it is "manifest, under the most liberal view of the law and the facts, that the government cannot prove its claim." *Church of Scientology*, 920 F.2d at 1485-86 (citing *Thrower v. Miller*, 440 F.2d 1186, 1187 (9th Cir. 1971)). The Court makes this determination "based upon the information available to the court at the time of the filing of the action." *Id.* The burden of showing that the Government's claim is baseless is on the taxpayer. *Church of Scientology*, 920 F.2d at 1486 (citing *Schildcrout v. McKeever*, 580 F.2d 994, 997 (9th Cir. 1978)). To meet the second prong of the test, the taxpayer must demonstrate that he or she is entitled to equitable relief. *Church of Scientology*, 920 F.2d at 1486. This requires the taxpayer show "he has no adequate remedy at law and that the denial of injunctive relief would cause him immediate, irreparable harm." *Id.* (quoting *Jensen v. IRS*, 835 F.2d 196, 198 (9th Cir. 1987)).

Here Plaintiffs have not met their burden to show the Government cannot prove its case under even the "most liberal view of law and facts" because they have failed to conclusively rebut the "good cause" exception. Plaintiffs argue that the Government cannot

---

[3]The Court also notes that to accept the Plaintiffs' interpretation and apply the *Regan* exception wherever a remedy is "inadequate" would render the exception in *Enoch v. Williams Packing* redundant. *See American Friends* 419 U.S. at 11 ("inadequacy of available remedies…[is a] prerequisite for traditional equity jurisdiction… one of the two parts of the [*Williams Packing*] test.")

prevail because the Notice "has the force and effect of law" and fails to meet the APA "notice-and-comment" requirements. (Doc. 26. At 24-25.) However, the "notice-and-comment" requirement does not generally apply "to interpretative rules…or when the agency for good cause finds…that notice and public procedure thereon are impracticable, unnecessary, or contrary to the public interest." 5 U.S.C. § 553(b); *Riverbend Farms, Inc. v. Madigan*, 958 F.2d 1479, 1484 (9th Cir. 1992) ("The good cause exception is proof that Congress intended to let agencies depart from normal APA procedures where compliance would jeopardize their assigned missions."). To be clear, the Court does not today decide whether the "good cause" exception applies to the Notice in question. Such a finding is unnecessary.  It is enough for the Court to find that Plaintiffs have not met their burden of showing under "most liberal view of law and facts" the exception could apply. In consequence, Plaintiffs fail the first prong of the *Williams Packing* exception.

## VI.     Request for Judicial Notice

Having determined Plaintiffs' case is barred by the AIA and that neither exception applies, the Court will briefly discuss Plaintiffs' request for judicial notice. Federal Rule of Evidence 201(b) permits judicial notice of an adjudicative fact that is "not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." *United States v. Daychild*, 357 F.3d 1082, 1099 (9th Cir. 2004).

Plaintiffs filed their notice asking the Court to find they "are subject to potential criminal sanctions under Title 26 in accordance with the express language of § 6707A(f)" for their noncompliance with the Notice. (Doc. 29. at 2.) The Government responds, and this Court agrees, that such an assertion is subject to reasonable dispute and not a proper subject for judicial notice. Subsection (f) states only that "the penalty imposed by this section shall be in addition to any other penalty imposed by this title." This provision does not in and of itself create criminal liability, it merely preserves the Government's ability to apply other penalties if independently merited by the facts of a case. Plaintiffs' motion

declines to outline any other criminal provisions in Title 26 that are triggered by noncompliance with the Notice. As such the Court declines to find as a matter of judicial notice that Plaintiffs are under the threat of criminal prosecution.

**VII.    Conclusion**

Accordingly,

**IT IS ORDERED** that Defendant's Motion to Dismiss (Doc. 23) is **granted.**

**IT IS FURTHER ORDERED** that Plaintiffs' Motion for Judicial Notice of an Adjudicative Fact (Doc. 29) is **denied**.

**IT IS FURTHER ORDERED** that Plaintiffs' Complaint (Doc. 1) be **dismissed.**

**IT IS FURTHER ORDERED** that the Clerk of Court enter Judgment and terminate this case.

Dated this 13th day of October, 2020.

Honorable Susan M. Brnovich
United States District Judge